# In the United States Court of Federal Claims

No. 18-823C

(E-Filed: July 13, 2018)

|  |  |
|---|---|
| KGL FOOD SERVICES WLL,<br><br>    Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>    Defendant,<br><br>and<br><br>ANHAM FZCO,<br><br>    Intervenor-defendant. | Intervention as of Right; Permissive Intervention; RCFC 24. |

John E. McCarthy Jr., Washington, DC, for plaintiff.  David C. Hammond, Mark A. Ries, Robert J. Sneckenberg, Sharmistha Das, Charles Baek, of counsel.

Daniel S. Herzfeld, Trial Attorney, with whom were Chad A. Readler, Acting Assistant Attorney General, Robert E. Kirschman, Jr., Director, Douglas K. Mickle, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant.  Daniel K. Poling, Associate General Counsel, David Nolte, Associate General Counsel, R. Zen Schaper, Senior Counsel, and Cathleen Choromanski, Assistant Counsel, Defense Logistics Agency, of counsel.

Eric J. Marcotte, Washington, DC, for intervenor-defendant.  Kelly E. Buroker, Tamara Droubi, Jeffrey M. Lowry, Richard P. Rector, C. Bradford Jorgensen, Eric P. Roberson, of counsel.

Christopher R. Yukins, Washington, DC, for Agility DGS Logistics Services Co. KSC(c).  Steven S. Diamond and Nathaniel Castellano, of counsel.

OPINION

CAMPBELL-SMITH, J.

On June 27, 2018, Agility DGS Logistics Services Co. KSC(c) (Agility), filed a motion seeking to intervene in this bid protest case. See ECF No. 37. Agility has filed a separate bid protest in this court relating to the same solicitation that is the subject of the instant case. See Agility DGS Logistics Servs. Co. KSC(c) v. United States, Case No. 18-887C. Plaintiff, defendant, and intervenor-defendant have each filed a response opposing Agility's intervention. See ECF Nos. 42 (intervenor-defendant's brief), 43 (plaintiff's brief), 44 (defendant's brief). Agility filed a reply in support of its motion. See ECF No. 50. The motion is ripe for ruling, and for the following reasons, is **DENIED**.

I.   Background

As alleged by plaintiff in its complaint, this bid protest "involves a critical United States Defense Logistics Agency (DLA) contract for full-line food distribution services supporting military and other federally funded customers located in Kuwait, Iraq, Syria, and Jordan." ECF No. 29 at 1 (redacted complaint). Plaintiff was the initial awardee, but two unsuccessful offerors challenged the award before the Government Accountability Office (GAO). See id. at 1-2. The GAO determined that corrective action was appropriate, and plaintiff now challenges that corrective action. See id. at 2.

Agility, the party seeking to intervene, did not make an offer in response to the original solicitation. See ECF No. 37 at 7 (Agility stating that "[i]f successful, Agility will be an offeror under the Solicitation, much as KGL and ANHAM are"), (arguing that any corrective action must "incorporate new competitors (e.g., Agility)"). As defendant explains in its response brief, Agility was suspended at the time DLA accepted offers on the solicitation, and therefore was not eligible to participate. See ECF No. 44 at 1. Agility argues, however, that the court should allow its intervention as a matter of fairness. "Agility . . . asks to intervene . . . to protect its interest in . . . the full and open competition that the Competition in Contracting Act (CICA) demands, and to ensure that the proceedings in its own protest are as efficient and fair as possible, given the parallel proceedings." ECF No. 37 at 4.

In response, all three parties to this case object on the basis that Agility has no interest in this bid protest because it was not an offeror under the solicitation. See ECF No. 42 at 4 (intervenor-defendant arguing that "Agility lacks a protectable interest in [this] protest as it was not a competitor for the award at issue"); ECF No. 43 at 3 (plaintiff arguing that "[b]ecause it did not submit a proposal or otherwise participate in the procurement to date, Agility is not eligible to participate in the corrective action," and thus, "would lack standing to protest the specifics of the corrective action, or to protest

2

that the current procurement should be altered in any given way"); ECF No. 44 at 3 (defendant noting that "[a]t the time proposals were due, Agility was suspended and Agility never submitted an offer").

Agility defends its request to intervene in its reply, arguing that its involvement here relates to "fundamental issues of fairness and efficiency." ECF No. 50 at 1-2. Agility does not respond directly to the argument that it has no legally protected interest because it was not an offeror in the first instance, a fact that it seemed to acknowledge in its opening brief. See ECF No. 37 at 7. Instead, it confuses matters with the misleading statement that it is a "responsible offeror with a legally protectable and asserted right to compete under the Solicitation," while at the same time making the contradictory accusation that plaintiff and intervenor-defendant "do not want Agility to succeed in introducing fresh competition into this acquisition." ECF No. 50 at 4.

II.  Legal Standards

Under Rule 24 of the Rules of the United States Court of Federal Claims (RCFC), the court may allow a party to intervene as of right, or permissively. Rule 24 provides, with respect to intervention as of right, in relevant part:

> On timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

See RCFC 24(a)(2). The United States Court of Appeals for the Federal Circuit has elaborated on these requirements for establishing a right to intervene.

> First, the motion must be timely. Second, the movant must claim some interest in the property affected by the case. This interest must be "legally protectable"—merely economic interests will not suffice. Third, that interest's relationship to the litigation must be "of such a <u>direct</u> and <u>immediate</u> character that the intervenor will either gain or lose by the <u>direct</u> legal operation and effect of the judgment." Fourth, . . . the movant must demonstrate that said interest is not adequately addressed by the government's participation.

Wolfsen Land & Cattle Co. v. Pac. Coast Fed. of Fishermen's Ass'n, 695 F.3d 1310, 1315 (Fed. Cir. 2012) (quoting Am. Mar. Transp. v. United States, 870 F.2d 1559, 1560-62 (Fed. Cir. 1989)).

With regard to permissive intervention, the court has broad discretion. See John R. Sand & Gravel Co. v. United States, 59 Fed. Cl. 645, 657 (2004), aff'd sub nom. John R. Sand & Gravel Co. v. Brunswick Corp., 143 F. App'x 317 (Fed. Cir. 2005) ("The court has broad discretion in deciding whether to allow permissive intervention.") (citation omitted). The rule provides, in relevant part: "On timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." RCFC 24(b)(1)(B). "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." RCFC 24(b)(3).

III.   Analysis

    A.   Intervention as of Right

Agility claims that it has the right to intervene in this action. In its brief, Agility addresses each of the four parts of the Federal Circuit's formulation of the requirements in RCFC 24(a)(2). The parties' focus, however, is on the second and third issues—whether Agility possesses the requisite legally protectable and direct interest in the subject of the present action to support its intervention. Agility identifies its interest in this litigation as the opportunity to "be an offeror under the Solicitation, much as [plaintiff] and [intervenor-defendant] are." ECF No. 37 at 7. It alleges that its interest is direct and immediate because a decision to "reconsider the scope of [DLA's] corrective action . . . would be linked directed to Agility's claim that any such redefined corrective action must incorporate new competitors (e.g., Agility)." Id. Conversely, a decision that the corrective action was inappropriate would "foreclose Agility's interest in the procurement." Id. at 8.

Plaintiff, defendant, and intervenor-defendant all dispute Agility's position, arguing that the fact that Agility did not make an offer in response to the original solicitation precludes it from establishing an interest in this protest. See ECF No. 42 at 5 (intervenor-defendant stating that "because it did not submit a proposal, Agility lacks any legally protectable interest in DLA's initial award decision, or in any reevaluation of the proposals that were submitted in response to the Solicitation"); ECF No. 43 at 3 (plaintiff arguing that "[b]ecause it did not submit a proposal or otherwise participate in the procurement to date, Agility is not eligible to participate in th[e] corrective action"); ECF No. 44 at 3-4 (defendant asserting that "[i]t is unclear how Agility can establish a legally protectable interest in this case, given that it never submitted a proposal and, thus, did not participate in the source selection process (which is the primary focus in this case)"). Moreover, the parties argue that even if Agility had an interest in the litigation, that interest would not be directly affected by the outcome. See ECF No. 42 at 5 (intervenor-defendant arguing that "even if the Agency were to reconsider the scope of its corrective action under the Solicitation, its reconsideration would apply to the offerors that bid on the Solicitation—and not Agility"); ECF No. 43 at 3 (plaintiff asserting that Agility lacks

a direct interest because if this case is successful, it would result "in the original awardee's award being reinstated"); ECF No. 44 at 4 (defendant arguing that any interest Agility may have is "indirect and speculative").

The court agrees with plaintiff, defendant, and intervenor-defendant. It does not appear that Agility, as a non-offeror in this procurement, has any legally protectable interest in the outcome of the instant litigation. Agility has provided the court no basis for concluding that it is legally entitled to become an offeror should the agency press forward with its corrective action. See, e.g., Microdyne Outsourcing, Inc. v. United States, 72 Fed. Cl. 230, 232 (2006) (explaining that the term "interested parties," as used in 28 U.S.C. § 1491(b)(1) (2012) "excludes those who did not submit proposals, bidders who withdrew from a solicitation, and offerors who were not competitively ranked for award") (citing Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1334 (Fed. Cir. 2001)).

Even assuming, however, that Agility's alleged interest was legally protectable, it is far too attenuated to meet the requirement that intervention be based on an interest that is direct or immediate in nature. As noted above, Agility contends that its interest is sufficiently direct and immediate because a decision to "reconsider the scope of [DLA's] corrective action . . . would be linked directly to Agility's claim that any such redefined corrective action must incorporate new competitors (e.g., Agility)." ECF No. 37 at 7. Conversely, a decision that the corrective action was inappropriate would "foreclose Agility's interest in the procurement." Id. at 8.

Agility's argument on this point fails on its own terms. First, Agility's position that a corrective action would include new offerors is entirely too speculative, and cannot be considered either direct or immediate. In addition, if the court determines that the corrective action was inappropriate, Agility loses no rights or opportunities that it currently possesses. Indeed, Agility's apparent suspension is the condition that foreclosed its opportunity to compete for an award under the subject solicitation, not its inability to intervene in this action.

This conclusion is in accord with the outcome and colorful illustration drawn in Nevada Site Science Support & Technologies Corporation v. United States, 128 Fed. Cl. 337, 338 (2016). Therein, the court denied two motions to intervene filed by disappointed competitors, where the plaintiff sought reinstatement of the original award:

> It seems clear to the Court that the potential intervenors have no real interest in this dispute, as "interest" is legally understood. The potential intervenors would certainly have an interest in getting a contract of which they are legally qualified, and, if the plaintiff loses the protest, one of the potential intervenors may receive the subsequent award. However, the simple fact that a party might benefit from another's legal misfortune does not lead to an

5

> understanding that said party should have a role in occurrence of that legal misfortune. If a singer suffers a voice injury and is, as result, fired from her job, it is hardly conceivable to believe that a Court would allow a rival singer to intervene in that case on the side of the employer simply because he might subsequently get the newly vacant job!

Nevada, 128 Fed. Cl. at 338. As was the case for the putative intervenors in Nevada, Agility could, theoretically, receive the award if the contract is re-solicited in the future. But such a possibility does not justify its intervention here.

Because Agility has failed to establish the requisite direct and legally protectable interest, the court declines to allow intervention as of right.

B.   Permissive Intervention

Agility contends that should the court determine it is not entitled to intervene as of right, the court should, nevertheless, allow it to intervene with permission. See RCFC 24(b)(1)(B) ("On timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact."). The issue that Agility offers as justification for permissive intervention is the common "challenge [to] the lawfulness of DLA's actions under the Solicitation." ECF No. 37 at 10. Agility, however, focuses more of its argument on fairness. It claims that "[p]rudence and equity demand that Agility not be left in the dark to litigate before the Court without fully understanding what is unfolding in the KGL protest, especially when all other parties will be opposing Agility with the benefit of comprehensive information from both matters." Id. For these reasons, Agility seeks "equitable intervention." Id.

Agility has offered no authority to support its request for what it calls equitable intervention. Instead, Agility has provided the court with various reasons to conclude that its interests materially diverge from those at stake in this case. In its opening brief, Agility emphasizes that it does not seek to actively participate in the case. Rather, "Agility's intervention would serve the sole purpose of ensuring fairness and efficiency in its own challenge to the Solicitation, without adding any burden to the proceedings in KGL's protest." Id. at 4. Agility states that it "seeks to intervene only in order to access the record." Id. at 10.[1] In addition, Agility acknowledges that the two cases are substantially different, noting that plaintiff "looks largely backwards in its post-award protest, while Agility's protest looks forward to a new competition," id. at 9, and that the two matters come "from very different vantage points," id. at 10.

---

[1]   The court notes that it has already denied Agility's request that the court order defendant to file the administrative record from this case in Agility's protest action. See Agility DGS Logistics Servs. Co. KSC(c) v. United States, Case No. 18-887C, ECF No. 17 at 1-2.

6

Because Agility has failed to demonstrate that it "has a claim or defense that shares with the main action a common question of law or fact," as required by RCFC 24(b)(1)(B), the court concludes that permissive intervention is inappropriate.

IV.     Conclusion

For the foregoing reasons, Agility's motion to intervene, ECF No. 37, is **DENIED**.

IT IS SO ORDERED.

                                       s/Patricia Campbell-Smith
                                       PATRICIA CAMPBELL-SMITH
                                       Judge